UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID FRANK SEARS,

          Petitioner,

    v.

RON BARNES,

          Respondent.

No.  2:13-cv-1241 JAM GGH P

FINDINGS AND RECOMMENDATIONS

Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction entered against him on November 28, 2011 in the Yuba County Superior Court on charges of second degree murder with enhancements.  He seeks federal habeas relief on the following grounds: (1) the admission of an uncharged prior conviction violated petitioner's due process right to a fair trial; (2) there was no evidentiary hearing or basis for an instruction on flight, and the combination of various errors resulted in cumulative prejudice; and (3) evidence was insufficient to prove second degree murder beyond a reasonable doubt.  Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

/////

/////

/////

1

1   BACKGROUND

2          In its unpublished memorandum and opinion[1] affirming petitioner's judgment of

3   conviction on appeal, the California Court of Appeal for the Third Appellate District provided the

4   following factual summary:

5                  Using a screwdriver, defendant David Frank Sears fatally stabbed
               Stephen Lambert, who was the boyfriend of his sister, Tanya Sears.
6               A jury found defendant guilty of second degree murder.

7                                            …

8                  In July 2010, Tanya and Lambert had gotten into a fight. Tanya
               called defendant to tell him Lambert had "put hands on [her]." A
9               short time later, defendant appeared in a car at the house where the
               fight had taken place. Defendant walked over to Lambert (who was
10              also in the driveway) and said, "'I'm David mother-fucking Sears.'"
               They argued and fought each other with their fists. Defendant then
11              stabbed Lambert with a rusty Philips head screwdriver in an upward
               thrusting motion toward Lambert's heart, leaving a four-and-one-
12              half inch exit wound in Lambert's heart. Defendant then told
               Lambert, "'You better go to the hospital. I got you.'"  Lambert died
13              at the hospital.

14                 Defendant left "[r]ight after he stabbed [Lambert]." As defendant
               walked back to the car, one Ben Kibbe tried to talk with defendant.
15              Defendant told Kibbe "to get out of his way, he was leaving," and
               he then threatened Kibbe with the screwdriver, saying, "'You want
16              some too?'"

17                 This was not the first time Sears had stabbed somebody. About 13
               years before defendant stabbed Lambert, defendant stabbed Marty
18              Washburn. Washburn had gotten into an argument with Tanya.
               Tanya called defendant to intervene. Defendant showed up and
19              stabbed Washburn with a knife, which required Washburn to get
               stitches. Defendant was convicted of assault with a deadly weapon.
20

21   People v. Sears, 2012 WL 5279172, at *1 (2012).[2]

22          After petitioner's judgment of conviction was affirmed by the California Court of Appeal,

23   he filed a petition for review in the California Supreme Court.  (Resp't's Lod. Doc. 4.)  The

24   Supreme Court summarily denied that petition without comment or citation by order dated

25   _____
   [1]  Although respondent refers to the opinion as Exhibit A to the answer, respondent has not
26  attached an exhibit.  The opinion is found at 2012 WL 5279172 (Oct. 26, 2012).

27   [2]  Marty Washburn was the uncle of Tanya's prior boyfriend, Floyd McKnight.  Tanya and Floyd
   were having an argument.  Washburn went over to the house where Tanya lived to visit Floyd
28  when he became involved in the argument with Tanya and her brother, petitioner.  (RT. 1281-82.)

                                        2

1   January 3, 2013.  (Resp't's Lod. Doc. 5.)

2   <u>DISCUSSION</u>

3   I.  <u>AEDPA Standards</u>

4        The statutory limitations of federal courts' power to issue habeas corpus relief for persons

5   in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective

6   Death Penalty Act of 1996 (AEDPA).  The text of § 2254(d) states:

7
> An application for a writ of habeas corpus on behalf of a person in
8
> custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits
9
> in State court proceedings unless the adjudication of the claim-

10
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
11
> determined by the Supreme Court of the United States; or

12
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
13
> State court proceeding.

14        As a preliminary matter, the Supreme Court has recently held and reconfirmed "that §

15   2254(d) does not require a state court to give reasons before its decision can be deemed to have

16   been 'adjudicated on the merits.'"  <u>Harrington v. Richter</u>, 131 S. Ct. 770, 785 (2011).

17   Rather, "when a federal claim has been presented to a state court and the state court has denied

18   relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

19   of any indication or state-law procedural principles to the contrary."  <u>Id.</u> at 784-785, citing <u>Harris</u>

20   <u>v. Reed</u>, 489 U.S. 255, 265, 109 S. Ct. 1038 (1989) (presumption of a merits determination when

21   it is unclear whether a decision appearing to rest on federal grounds was decided on another

22   basis).  "The presumption may be overcome when there is reason to think some other explanation

23   for the state court's decision is more likely."  <u>Id.</u> at 785.

24        The Supreme Court has set forth the operative standard for federal habeas review of state

25   court decisions under AEDPA as follows:  "For purposes of § 2254(d)(1), 'an *unreasonable*

26   application of federal law is different from an *incorrect* application of federal law.'"  <u>Harrington</u>,

27   <u>supra</u>, 131 S. Ct. at 785, citing <u>Williams v. Taylor</u>, 529 U.S. 362, 410, 120 S. Ct. 1495 (2000).

28   "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

3

1      'fairminded jurists could disagree' on the correctness of the state court's decision."  Id. at 786,

2      citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140 (2004).

3              Accordingly, "a habeas court must determine what arguments or theories supported or …

4      could have supported[] the state court's decision; and then it must ask whether it is possible

5      fairminded jurists could disagree that those arguments or theories are inconsistent with the

6      holding in a prior decision of this Court."  Id.  "Evaluating whether a rule application was

7      unreasonable requires considering the rule's specificity.  The more general the rule, the more

8      leeway courts have in reaching outcomes in case-by-case determinations.'"  Id.  Emphasizing the

9      stringency of this standard, which "stops short of imposing a complete bar of federal court

10     relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has

11     cautioned that "even a strong case for relief does not mean the state court's contrary conclusion

12     was unreasonable."  Id., citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S. Ct. 1166 (2003).

13            The undersigned also finds that the same deference is paid to the factual determinations of

14     state courts.  Under § 2254(d)(2), factual findings of the state courts are presumed to be correct

15     subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a

16     decision that was based on an unreasonable determination of the facts in light of the evidence

17     presented in the state court proceeding."  It makes no sense to interpret "unreasonable" in §

18     2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the

19     factual error must be so apparent that "fairminded jurists" examining the same record could not

20     abide by the state court factual determination.  A petitioner must show clearly and convincingly

21     that the factual determination is unreasonable.  See Rice v. Collins, 546 U.S. 333, 338, 126 S. Ct.

22     969, 974 (2006).

23            The habeas corpus petitioner bears the burden of demonstrating the objectively

24     unreasonable nature of the state court decision in light of controlling Supreme Court authority.

25     Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).  Specifically, the petitioner "must

26     show that the state court's ruling on the claim being presented in federal court was so lacking in

27     justification that there was an error well understood and comprehended in existing law beyond

28     any possibility for fairminded disagreement."  Harrington, supra, 131 S. Ct. at 786-787.  "Clearly

1    established" law is law that has been "squarely addressed" by the United States Supreme Court.

2    Wright v. Van Patten, 552 U.S. 120, 125, 128 S. Ct. 743, 746 (2008).  Thus, extrapolations of

3    settled law to unique situations will not qualify as clearly established.  See e.g., Carey v.

4    Musladin, 549 U.S. 70, 76, 127 S. Ct. 649, 653-54 (2006) (established law not permitting state

5    sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear

6    prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly

7    established law when spectators' conduct is the alleged cause of bias injection).  The established

8    Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other

9    controlling federal law, as opposed to a pronouncement of statutes or rules binding only on

10    federal courts.  Early v. Packer, 537 U.S. 3, 9, 123 S. Ct. 362, 366 (2002).

11         When a state court decision on a petitioner's claims rejects some claims but does not

12    expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that

13    the federal claim was adjudicated on the merits.  Johnson v. Williams, ___ U.S. ___, 133 S. Ct.

14    1088, 1091 (2013).  The state courts need not have cited to federal authority, or even have

15    indicated awareness of federal authority in arriving at their decision.  Early, supra, 537 U.S. at 8,

16    123 S. Ct. at 365.  However, where the state courts have not addressed the constitutional issue in

17    dispute in any reasoned opinion, the federal court will independently review the record in

18    adjudication of that issue.  "Independent review of the record is not de novo review of the

19    constitutional issue, but rather, the only method by which we can determine whether a silent state

20    court decision is objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.

21    2003).

22         Finally, if the state courts have not adjudicated the merits of the federal issue, no

23    AEDPA deference is given; the issue is reviewed de novo under general principles of federal law.

24    Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2012).

25    II.  ADMISSION OF PRIOR CONVICTION

26         Petitioner contends that his due process right to a fair trial was violated in regard to his

27    prior act of stabbing Mr. Washburn with a knife which he claims demonstrated no common plan

28    or scheme between the 1997 incident and the current crime, and the potential for prejudice was

great because the jury could view the 1997 evidence as a character trait or "propensity evidence to commit violence." (ECF No. 1 at 13.)  Petitioner also claims that the court's admission of the prior act in a sanitized manner without all the facts (such as the fact that Washburn was stabbed in the back), was error.  (Id. at 10.)  Petitioner argues that as a consequence, the jury was precluded from finding voluntary manslaughter, and petitioner was prejudiced thereby.  Petitioner claims that this error was not harmless in that in admission of the prior bad act caused the jury to find second degree murder, and it would not have done so otherwise, since five witnesses testified that Stephen Lambert was armed at the time of the confrontation, and that petitioner told Lambert to go to the hospital and get checked after the stabbing, supporting his position that he had no intent to kill.  (Id. at 14.)

The California Court of Appeal rejected petitioner's challenges to the trial court's admission of evidence of his prior assault on Washburn.  That court reasoned as follows:

> Defendant contends the court erred in admitting evidence of the Washburn stabbing to prove that defendant knew that the result of stabbing Lambert with a screwdriver could be great bodily injury or death and that defendant had a common scheme or plan to commit the current offense. There was no abuse of discretion.
>
> A trial court can admit "evidence that a person committed a crime ... when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, [or] absence of mistake or accident) ... other than his or her disposition to commit such an act." (Evid. Code, § 1101, subd. (b).) However, the court can exclude any evidence "if its probative value is substantially outweighed by the probability that its admission will ... create substantial danger of undue prejudice...." (Evid. Code, § 352.) A trial court's "exercise of that discretion 'must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' [Citation.]" (People v. Rodrigues (1994) 8 Cal.4th 1060, 1124–1125.)
>
> The court did not abuse its discretion in concluding the Washburn stabbing tended to show defendant knew that stabbing Lambert with a screwdriver could result in great bodily injury or death. In a hearing to decide the admissibility of this evidence, Washburn testified that after defendant stabbed him in the back with a knife, Washburn went to the hospital and received stitches. A trier of fact could reasonably determine that a knife injury to a person's back that required stitches qualified as great bodily injury. (See People v. Nava (1989) 207 Cal.App.3d 1490, 1495.)
>
> The court also did not abuse its discretion in concluding the

6

1
2
3
4

> Washburn stabbing constituted defendant's common scheme or plan to stab men who had fought with his sister, when she requested he come to her aid. Both Washburn and Lambert got into arguments with Tanya shortly before defendant stabbed them. After both fights, Tanya called defendant to intervene. Defendant responded by going after both men, stabbing one in the back with a knife and the other in the heart with a screwdriver.

5
6
7
8
9
10

> Finally, the court did not abuse its discretion in concluding the probative value of the evidence was not substantially outweighed by the probability that its admission would create substantial danger of undue prejudice. The court sanitized the facts of the Washburn stabbing so the jury heard only that defendant stabbed Washburn (excluding that it was in the back), which required stitches (excluding that he was hospitalized). Further, the jury was not inclined to punish defendant for the prior conduct, because it learned he was already convicted of assault with a deadly weapon for that conduct.

11  2012 WL 5279172, *1-2.

12      A federal writ of habeas corpus is not available for alleged error in the interpretation or

13  application of state law.  Wilson v. Corcoran, 562 U.S. ___, 131 S. Ct. 13, 16 (2010).  Absent

14  some federal constitutional violation, a violation of state law does not provide a basis for habeas

15  relief.  Id.  A petitioner may not "transform a state-law issue into a federal one" merely by

16  asserting a violation of the federal constitution.  Langford v. Day, 110 F.3d 1380, 1389 (9th Cir.

17  1997).  Rather, petitioner must show that the decision of the California Court of Appeals

18  "violated the Constitution, laws, or treaties of the United States."  Little v. Crawford, 449 F.3d

19  1075, 1083 (9th Cir. 2006) (quoting Estelle, 502 U.S. at 68).  Accordingly, to the extent

20  petitioner's due process claims are based on alleged violations of state law governing the

21  admissibility of evidence, they should be rejected.

22      A state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief

23  only if it renders the state proceedings so fundamentally unfair as to violate due process.  Holley

24  v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009); Jammal v. Van de Kamp, 926 F.2d 918, 919

25  (9th Cir. 1991).  Even so, as the Ninth Circuit has observed:

26
27
28

> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process.  Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair (citation omitted), it has not yet made a clear ruling that admission

7

of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.

Holley, 568 F.3d at 1101.  Therefore, "under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme Court."  Id.  On the basis of these authorities, the state court's rejection of petitioner's due process claim here does not support federal habeas relief under AEDPA because the admission of evidence at trial regarding petitioner's prior assault on Washburn did not violate any clearly established federal law.  Id.

Similarly, the United States Supreme Court "has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that it violates due process to admit other crimes evidence for other purposes without an instruction limiting the jury's consideration of the evidence to such purposes." Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2001), overruled on other grounds by Woodford v. Garceau, 538 U.S. 202 (2003).  See also Alberni v. McDaniel, 458 F.3d 860, 863 (9th Cir. 2006).  In fact, the Supreme Court has expressly left open this question.  See Estelle v. Mcguire, 502 U.S. 62, 75 n.5, 112 S. Ct. 475, 484 n. 5 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime").  See also Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008) (holding that state court had not acted objectively unreasonably in determining that the propensity evidence introduced against the defendant did not violate his right to due process); Alberni, 458 F.3d at 863-67 (denying the petitioner's claim that the introduction of propensity evidence violated his due process rights under the Fourteenth Amendment because "the right [petitioner] asserts has not been clearly established by the Supreme Court, as required by AEDPA"); United States v. LeMay, 260 F.3d 1018 (9th Cir. 2001) (Fed. R. Evid. 414, permitting admission of evidence of similar crimes in child molestation cases, under which the test for balancing probative value and prejudicial effect remains applicable, does not violate the due process clause).  In short, because the state court's

1    rejection of petitioner's due process claim is not contrary to any United States Supreme Court

2    precedent, petitioner is not entitled to federal habeas relief with respect to this claim.

3            For all of the reasons set forth above, petitioner has failed to demonstrate that the state

4    court's decision rejecting his due process claim was contrary to or an unreasonable application of

5    federal law, or based on an unreasonable determination of the facts of this case.  Accordingly,

6    petitioner is not entitled to habeas corpus relief.  28 U.S.C. § 2254(d).

7    III.  Flight Instruction

8            Petitioner's second claim is that there was no evidentiary hearing or basis upon which to

9    give an instruction on flight, and it was error to do so.  Petitioner later concedes:

> Standing alone, the erroneous instruction regarding flight most
> certainly would not invite federal habeas relief based on the court's
> high threshold criteria regarding instructional error claims.
>
> Coupled with the additional claims (Ground One) prejudice, and in
> light of the non-application of harmless error, the constitutional
> claim is worthy of federal habeas relief….

14   (ECF No. 1 at 17.)  See also Traverse.  (ECF No. 14 at 5.)  Respondent interprets these statements

15   as a concession by petitioner that the flight instruction alone was not error, but rather an attempt

16   to make a cumulative error claim which is unexhausted, but in any event fails on the merits.

17   Because a cumulative error analysis requires evaluating the underlying claims, petitioner's other

18   claims will be addressed first.[3]

19          A.  Applicable Legal Principles

20          In general, a challenge to jury instructions does not state a federal constitutional claim.

21   McGuire, 502 U.S. at 72; Engle v. Isaac, 456 U.S. 107, 119 (1982)); Gutierrez v. Griggs, 695

22   F.2d 1195, 1197 (9th Cir. 1983).  In order to warrant federal habeas relief, a challenged jury

23   instruction "cannot be merely 'undesirable, erroneous, or even "universally condemned,"'" but

24   must violate some due process right guaranteed by the fourteenth amendment."  Cupp v.

25   Naughten, 414 U.S. 141, 146 (1973).  To prevail on such a claim petitioner must demonstrate

26

27   [3]  The court will address the cumulative error claim last, after analyzing Claim Three, insufficient
     evidence to support second degree murder, as it is not entirely clear that petitioner's cumulative
28   error claim intended to include Claim Three.

1   "that an erroneous instruction 'so infected the entire trial that the resulting conviction violates due

2   process.'"  Prantil v. State of Cal., 843 F.2d 314, 317 (9th Cir. 1988) (quoting Darnell v.

3   Swinney, 823 F.2d 299, 301 (9th Cir. 1987)).  In making its determination, this court must

4   evaluate the challenged jury instructions "'in the context of the overall charge to the jury as a

5   component of the entire trial process.'"  Id. (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th

6   Cir. 1984)).

7        B.  Flight Instruction Analysis

8        Petitioner's jury was given the following instruction:

9        If the defendant fled or tried to flee immediately after the crime was
         committed, that conduct may show that he was aware of his guilt.
10       If you conclude that the defendant fled or tried to flee, it is up to
         you to decide the meaning and importance of that conduct.
11       However, evidence that the defendant fled or tried to flee cannot
         prove guilt by itself.

12

13   (CT 393.)  To the extent that petitioner continues to assert that the giving of this instruction was

14   error separately from cumulative error, he claims that Lambert also left the scene, and that

15   Lambert had been armed with a Maglite flashlight.  (ECF No. 1 at 16.)  Therefore, according to

16   petitioner, the instruction erroneously permitted the jury to infer consciousness of guilt rather than

17   self-defense.  In this regard, the California Court of Appeal rejected these arguments largely on

18   state law grounds, reasoning as follows:

19       Defendant contends the flight instruction was improper because the
         evidence was only that defendant "left before Mr. Lambert did."
20       Not so.

21       "In general, a flight instruction 'is proper where the evidence shows
         that the defendant departed the crime scene under circumstances
22       suggesting that his movement was motivated by a consciousness of
         guilt.'"  (People v. Bradford (1997) 14 Cal.4th 1005, 1055.)  "To
23       obtain the instruction, the prosecution need not prove the defendant
         in fact fled, i.e., departed the scene to avoid arrest, only that a jury
24       could find the defendant fled and permissibly infer a consciousness
         of guilt from the evidence."  (People v. Bonilla (2007) 41 Cal.4th
25       313, 328.)

26       Here, the evidence was that defendant tried to leave immediately
         after stabbing Lambert and then threatened a person who appeared
27       to be thwarting his escape, Ben Kibbe.  Specifically, defendant tried
         to leave "[r]ight after he stabbed [Lambert]."  As defendant walked
28       back to the car, Kibbe tried to talk with defendant.  Defendant

10

1
2
3
4

> responded by telling him "to get out of his way, he was leaving," and then he threatened Kibbe with the screwdriver, saying, "'You want some too?'" From this evidence, the trial court was warranted in concluding a flight instruction was proper because a jury could have found that defendant was so adamant on leaving the crime scene that he would do whatever he needed to escape, including stab an additional victim.

5   2012 WL 5279172, at *2.

6        Additionally, respondent points out that the trial court further instructed the jury that some

7   of the instructions given may not apply after the jury made certain findings, and that the jury

8   should not assume certain facts based on the instructions given, but rather the jury was to follow

9   the instructions that apply to the facts as found by them. (CT 361.)

10       This court will not review the state court's rejection of petitioner's claim of jury

11  instruction error on state law grounds, because federal habeas relief is not available for alleged

12  error in the interpretation or application of state law. See Wilson v. Corcoran, ___ U.S. ___,131

13  S. Ct. 13,16 (2010); Estelle, 502 U.S. at 67-68; Park v. California, 202 F.3d 1146, 1149 (9th Cir.

14  2000); see also Mullaney v. Wilbur, 421 U.S. 684, 691 n. 11, 95 S. Ct. 1881 (1975) (federal

15  courts will not review an interpretation by a state court of its own laws unless that interpretation is

16  clearly untenable and amounts to a subterfuge to avoid federal review of a deprivation by the state

17  of rights guaranteed by the Constitution).

18       In order for the trial court's alleged erroneous instructions to warrant federal habeas relief,

19  petitioner must demonstrate that he suffered a violation of due process. See Estelle, 502 U.S. at

20  72 ("The only question for us is 'whether the ailing instruction by itself so infected the entire trial

21  that the resulting conviction violates due process.'") (quoting Cupp v. Naughten, 414 U.S. 141,

22  147, 94 S. Ct. 396, 38 L.Ed.2d 368 (1973). That is, in order for relief to issue, a challenged jury

23  instruction "cannot be merely 'undesirable, erroneous, or even 'universally condemned,' 'but

24  must violate some due process right guaranteed by the fourteenth amendment.'" Cupp, 414 U.S.

25  at 146. See also Hendricks v. Vasquez, 974 F.2d 1099, 1106 (9th Cir.1992). The Due Process

26  Clause "safeguards not the meticulous observance of state procedural prescriptions, but 'the

27  fundamental elements of fairness in a criminal trial.'" Rivera v. Illinois, 556 U.S. 148, 158, 129

28  S. Ct. 1446 (2009) (quoting Spencer v. Texas, 385 U.S. 554, 563-64, 87 S. Ct. 648 (1967)). The

11

1    Supreme Court has defined 'very narrowly' the category of infractions that violate fundamental

2    unfairness.  Dowling v. United States, 493 U.S. 342, 352, 110 S. Ct. 668 (1990).

3         The conclusion of the California Court of Appeal that the instruction given to petitioner's

4    jury regarding flight was correct under California law is binding on this court.  See Bradshaw,

5    546 U.S. at 76 ("a state court's interpretation of state law, including one announced on direct

6    appeal of the challenged conviction, binds a federal court sitting in habeas corpus").  Of course,

7    any claim that the California Court of Appeal misapplied state law is not cognizable in this

8    federal habeas action.  Estelle, 502 U.S. at 68.

9         With regard to petitioner's federal due process claim, he has failed to demonstrate that the

10   giving of the challenged jury instructions rendered his trial fundamentally unfair.  For the reasons

11   set forth by the California Court of Appeal, the trial evidence was sufficient to support the giving

12   of the jury instruction on flight.  Furthermore, petitioner's self-defense argument based on the

13   victim being armed with a Maglite is not persuasive in regard to his departure from the scene, as

14   he had *already* fatally stabbed the victim.  This argument has nothing to do with flight.

15   Moreover, to the extent that the argument could relate to flight, three witnesses, including Juanita

16   Thomas,  Elizabeth Buchholz, and Jessica Ross,[4] all testified that Lambert was not armed in any

17   way at the time petitioner stabbed him.  (RT. 785, 889, 1167.)  Although at least one witness

18   testified that Lambert picked up a Maglite from the vehicle when petitioner approached him and

19   "acted like he was going to hit" petitioner with it, (RT. 1017-18), both this witness as well as

20   several other witnesses testified that petitioner is the one who approached Lambert.  (Id. at 1017,

21   610-11, 782, 1162.)  The language of that instruction was not unfair or unduly prejudicial.

22   Accordingly, petitioner is not entitled to federal habeas relief with respect to this jury instruction

23   error claim.

24   IV.  Sufficient Evidence to Support Second Degree Murder

25        Petitioner's third ground for relief is that the evidence was insufficient to prove second

26   degree murder beyond a reasonable doubt because he lacked the intent to kill, and the verdict

27

28   [4]  This witness also testified that she did not see anything in petitioner's hands either.  (Id. at 1167.)

1    should have been voluntary manslaughter but for the other constitutional errors, including

2    admission of the 1997 incident and use of the flight instruction.

3        The California Court of Appeal rejected the argument that implied malice was lacking, as

4    set forth in the following portion of the opinion:

> Defendant contends there was insufficient evidence of second degree murder because implied malice was lacking. We disagree.
>
> Second degree murder is the unlawful killing of a human being with malice aforethought. (People v. Cravens (2012) 53 Cal.4th 500, 507.) Malice may be implied when a defendant is aware that he is engaging in conduct that endangers the life of another. ( Ibid.) "An assault with a deadly weapon made in a manner to endanger life and resulting in death is sufficient to sustain a conviction of second degree murder, as the requisite malice is implied from the assault." (People v. Pacheco (1981) 116 Cal.App.3d 617, 625.)
>
> Here, defendant stabbed Lambert with a screwdriver in an upward thrusting motion toward Lambert's heart, leaving a four-and-one-half inch exit wound. A jury could imply malice from the manner of this killing. In addition, a jury could have inferred Lambert's awareness of the deadly nature of his attack when he proclaimed, "'You better go to the hospital. I got you.'"

15    2012 WL 5279172, at *1.

16        The Due Process Clause of the Fourteenth Amendment "protects the accused against

17    conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

18    crime with which he is charged." In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L.Ed.2d

19    368 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in

20    the light most favorable to the prosecution, any rational trier of fact could have found the essential

21    elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.

22    Ct. 2781, 61 L.Ed.2d 560 (1979). "[T]he dispositive question under Jackson is 'whether the

23    record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" Chein

24    v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318). "A petitioner

25    for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the

26    evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408

27    F.3d 1262, 1274 (9th Cir. 2005). In order to grant the writ, the federal habeas court must find that

28    the decision of the state court reflected an objectively unreasonable application of Jackson and

1 | <u>Winship</u> to the facts of the case.  <u>Id.</u> at 1275 & n. 13.

2 | In this case, petitioner was convicted of second degree murder in violation of California

3 | Penal Code § 187, which states:  "(a) Murder is the unlawful killing of a human being, or a fetus,

4 | with malice aforethought."  Malice is then defined as follows:

> Such malice may be express or implied. It is express when there is
> manifested a deliberate intention unlawfully to take away the life of
> a fellow creature. It is implied, when no considerable provocation
> appears, or when the circumstances attending the killing show an
> abandoned and malignant heart.

> When it is shown that the killing resulted from the intentional doing
> of an act with express or implied malice as defined above, no other
> mental state need be shown to establish the mental state of malice
> aforethought. …

11 | Cal. Penal Code § 188.  As the California Court of Appeals noted, *supra*, implied malice exists

12 | "when a defendant is aware that he is engaging in conduct that endangers the life of another."

13 | 2012 WL 5279172, at *1, citing <u>People v. Cravens</u>, 53 Cal.4th 500, 507 (2012).

14 | In contrast, manslaughter is defined as "the unlawful killing of a human being without

15 | malice."  Cal. Penal Code § 192.  Voluntary manslaughter is found "upon a sudden quarrel or

16 | heat of passion."  <u>Id.</u>, subd. (a).  It may also be found when the defendant kills in "'unreasonable

17 | self-defense' - the unreasonable but good faith belief in having to act in self-defense [citations

18 | omitted]."  <u>People v. Lasko</u>, 23 Cal.4th 101, 108 (2000).

19 | Petitioner asserts that his unreasonable belief that he "must protect another person from

20 | imminent danger or great bodily injury," warranted a finding of voluntary manslaughter rather

21 | than murder.  The evidence as a whole does not support petitioner's view (the person alleged to

22 | need protection was in no way faced with imminent harm), and in any event is simply petitioner's

23 | take on the evidence presented.  Petitioner was the aggressor here, and came to the fight he was

24 | going to instigate armed with a screwdriver.  As the appellate court noted, the manner in which

25 | this aggression was carried out, i.e., a stabbing to a very vulnerable part of the body with great

26 | force, certainly indicates the intent to kill.  This was no glancing blow.  Simply because petitioner

27 | could present a scenario with some evidence which is at odds with a finding of malice does not

28 | mean that the evidence in its totality was insufficient.  Many trials contain conflicting evidence,

14

1   but the mere presence of conflicting evidence does not warrant a finding that the jury's decision

2   to convict is based on insufficient evidence.

3         Viewing the evidence in the light most favorable to the verdict, and with the

4   understanding that the appellate court conclusion of sufficiency must be AEDPA unreasonable in

5   order to grant a petition based on insufficiency, the undersigned concludes that there was

6   sufficient evidence from which a rational trier of fact could have found beyond a reasonable

7   doubt that petitioner acted with the intent to kill the victim.  The evidence presented included the

8   following testimony.  Petitioner had stabbed another individual in 1997 when petitioner's sister

9   called him to intervene after she had an argument with the victim of that incident.  In the current

10  case, petitioner came to the scene when his sister called him to intervene in an argument she was

11  having with her boyfriend.  As in the previous incident, petitioner stabbed the victim.  When he

12  first arrived at the scene, he approached the victim and stated, "I'm David mother-fucking Sears,"

13  from which the jury could infer that he was the aggressor.  Petitioner's sister at this time was not

14  in imminent danger or subject to great bodily injury as the testimony was to the effect that she

15  had just finished a fist fight with another woman, Elizabeth, who Lambert had also been seeing.

16  Lambert and his cousin, Juanita Thomas, pulled Tanya Sears and Elizabeth apart.  (RT. 772-73.)

17  Juanita Thomas then testified that as soon as she and Lambert broke up the fight, Lambert

18  dropped Tanya and then went back to loading his truck, demonstrating that he did not hit her.  (Id.

19  at 776.)  When he dropped her, she stepped back and off the edge of a curb, falling on her behind,

20  causing witnesses to giggle, which enraged her.  It was at that time that she declared she was

21  calling her brother to tell him that "Steve was beating her ass."  (Id. at 777.)  There was no

22  testimony that she was in imminent danger when petitioner arrived at the scene.  After petitioner

23  and Lambert fought with their fists, petitioner took a rusty screwdriver and stabbed Lambert in

24  the chest with an upward thrusting motion toward the heart, which resulted in a four-and-one-half

25  inch exit wound.  Petitioner was aware of the consequences of his actions with the screwdriver

26  turned deadly weapon by virtue of his statement to Lambert, "I got you, Homeboy.  You might

27  want to go to the hospital."  (RT. 1019.)

28  /////

1    This evidence fully supports the jury's finding that petitioner harbored implied malice,

2    and its decision to convict for second degree murder.  The state courts' denial of habeas relief

3    with respect to petitioner's insufficient evidence claim is not an objectively unreasonable

4    application of <u>Jackson</u> and <u>Winship</u> to the facts of the case.  Accordingly, petitioner is not entitled

5    to federal habeas relief with respect to this claim.

6    V.  <u>Cumulative Prejudice</u>

7    Petitioner contends that when Ground Two, instructional error, is considered in

8    conjunction with Ground One, the admission of his prior conviction, the result was highly

9    prejudicial and violated his constitutional rights.  (ECF No. 1 at 17.)  This claim will be construed

10   as one of cumulative error.

11   Although, as respondent argues, a cumulative error claim has not been exhausted, the

12   court may deny an unexhausted claim on the merits without regard to a petitioner's failure to

13   exhaust.  28 U.S.C. § 2254(b)(2); <u>Cassett v. Stewart</u>, 406 F.3d 614, 624 (9th Cir. 2005) (holding

14   that an unexhausted petition may be denied on the merits when it is perfectly clear that the

15   applicant does not raise even a colorable federal claim).

16   The Ninth Circuit has concluded that under clearly established federal law, the combined

17   effect of multiple trial errors may give rise to a due process violation if it renders a trial

18   fundamentally unfair, even where each error considered individually would not require reversal.

19   <u>Parle v. Runnels</u>, 505 F.3d 922, 927 (9th. Cir. 2007) (citing <u>Donnelly v. DeChristoforo</u>, 416 U.S.

20   637, 643 (1974) and <u>Chambers v. Mississippi</u>, 410 U.S. 284, 290 (1973)).  <u>See also</u> <u>Hayes v.</u>

21   <u>Ayers</u>, 632 F.3d 500, 524 (9th Cir. 2011) (if no error of constitutional magnitude occurred at trial,

22   "no cumulative prejudice is possible").  "The fundamental question in determining whether the

23   combined effect of trial errors violated a defendant's due process rights is whether the errors

24   rendered the criminal defense 'far less persuasive,' <u>Chambers</u>, 410 U.S. at 294, and thereby had a

25   'substantial and injurious effect or influence' on the jury's verdict."  <u>Parle</u>, 505 F.3d at 927

26   (quoting <u>Brecht</u>, 507 U.S. at 623).

27   Above, this court has addressed each of petitioner's claims individually and has concluded

28   that no error of constitutional magnitude occurred at his trial in state court.  Furthermore, to the

1    extent that petitioner may be arguing that Ground Three, insufficient evidence for second degree

2    murder, contributed to the cumulative error, the court comes to the same result.  This court

3    concludes that the errors alleged by petitioner, even when considered together, did not render his

4    defense "far less persuasive," nor did they have a "substantial and injurious effect or influence on

5    the jury's verdict."  Parle, 505 F.3d at 927.  Accordingly, petitioner is not entitled to federal

6    habeas relief on his claim of cumulative error.

7        Based on the state court record in this case, AEDPA requires the undersigned to uphold

8    the state court determinations as they were not AEDPA unreasonable.

9    CONCLUSION

10        For all of the foregoing reasons, the petition should be denied.  Pursuant to Rule 11 of the

11   Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of

12   appealability when it enters a final order adverse to the applicant.  A certificate of appealability

13   may issue only "if the applicant has made a substantial showing of the denial of a constitutional

14   right."  28 U.S.C. § 2253(c)(2).  For the reasons set forth in these findings and recommendations,

15   a substantial showing of the denial of a constitutional right has not been made in this case.

16        Accordingly, IT IS HEREBY RECOMMENDED that:

17        1.  Petitioner's application for a writ of habeas corpus be denied; and

18        2.  The District Court decline to issue a certificate of appealability.

19        These findings and recommendations are submitted to the United States District Judge

20   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

21   after being served with these findings and recommendations, any party may file written

22   objections with the court and serve a copy on all parties.  Such a document should be captioned

23   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

24   shall be served and filed within fourteen days after service of the objections.  Failure to file

25   /////

26   /////

27   /////

28   /////

17

1  objections within the specified time may waive the right to appeal the District Court's order.

2  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3  Dated: February 5, 2014

4                                          /s/ Gregory G. Hollows

5                              UNITED STATES MAGISTRATE JUDGE

6  GGH:076/Sears1241.hc

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28